IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKI STOVALL, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-06-1552 |
| | * | |
| THE RITZ-CARLTON HOTEL | * | |
| COMPANY, LLC, *et al.* | * | |
| | * | |
| Defendants. | * | |

*****************************************************************************

## MEMORANDUM OPINION

On June 19, 2006, Plaintiff Vicki Stovall ("Plaintiff") filed a one-count Complaint against Defendants The Ritz-Carlton Hotel Company, LLC ("RCHC") and The Ritz-Carlton Hotel Company of Jamaica, Ltd. ("RC-J") (collectively, "Defendants"), alleging negligence and premise liability for injuries she sustained while a guest at the Jamaican Resort. Currently pending before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 21) filed by Defendant RC-J. The motion has been fully briefed and the Court has reviewed the entire record. A hearing on the personal jurisdiction issue was held on September 17, 2007. For the reasons set forth below, the Court will DENY Defendant RC-J's Motion to Dismiss for Lack of Personal Jurisdiction.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In June 2004, Plaintiff Vicki Stovall, a California resident, went on vacation to Montego Bay, Jamaica, and stayed at The Ritz Carlton Spa & Resort, Rose Hall in St. James, Jamaica ("RCSR"). RCSR is owned by Rose Hall Resort, L.P., and is operated by Defendant RC-J. The

---

[1] The background facts have been incorporated from the Memorandum Opinion of June 26, 2007.

1

parent corporation of RC-J is RCHC.  Plaintiff alleges that prior to her trip, she visited the RCHC website, www.ritzcarlton.com, and visited a link advertising the awards and high quality of the RC-J and allowing viewers to make reservations through the website.  Plaintiff went on to reserve a room through an online travel agency.

On June 18, 2004, Plaintiff, who was still a guest at RCSR at the time, attempted to enter the "cold plunge" pool at the resort when her foot became lodged between the metal pool steps, causing her to fall into the water.  The fall resulted in severe injuries, causing permanent disfiguration and ligament damage to Plaintiff's right hip, recurring swelling of her right foot, sciatica, and low back pain in her lumbar spine.  Plaintiff then spent substantial sums of money for medical treatment of her injuries, which included back surgery.  Plaintiff alleged that Defendant's negligence and carelessness in allowing a dangerous condition to exist on their property, failing to inspect and address the dangerous condition, and failing to provide adequate warning of the dangerous condition resulted in her injury.  After her injury, Plaintiff was contacted by Debi Howard, a corporate employee of RCHC, who stated that RCHC employees would take over her claim.  Contact between Plaintiff and Ms. Howard was subsequently lost.  Therefore, on June 19, 2006, Plaintiff filed her Complaint against both Defendants, RCHC and RC-J.

On February 2, 2007, Defendant RCHC filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment (Paper No. 20).  Later on February 7, 2007, Defendant RC-J filed a Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 21.)  After having reviewed the record, the parties' briefs, and conducting a motions hearing, which was held on June 26, 2007, this Court granted Defendant RCHC's Motion to Dismiss, since Plaintiff could not allege any

facts that would warrant piercing the corporate veil and holding the parent company liable for alleged acts of negligence of its foreign subsidiary. However, this Court reserved ruling on Defendant RC-J's Motion to Dismiss for Lack of Personal Jurisdiction and ordered the parties extra time to conduct limited discovery on the jurisdiction issue. The parties supplemented the record by submitting stipulated deposition testimonies of Mr. Simon Cooper and Mr. David Mann (Paper No. 34), corporate Directors of RC-J, as well as the deposition of Mr. Kenneth Rehmann, the third corporate Director of RC-J and the corporate designee for RCHC.[2] A motions hearing was held on September 17, 2007, to hear oral argument solely on the question of personal jurisdiction.

## STANDARD OF REVIEW

Under the Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court does not conduct an evidentiary hearing, the Plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.* Since this Court has conducted a hearing with regard to personal jurisdiction, Plaintiff has the burden of proof by a preponderance of the evidence.

## ANALYSIS

A federal district court may only exercise jurisdiction over a non-resident defendant in a manner and extent authorized by state law in the forum state, unless a federal statute establishes an alternative basis for exercising personal jurisdiction. *See* Fed. R. Civ. P. 4(k); *Eplus Tech. v.*

---

[2] Mr. Rehmann is the Executive Vice President and Chief Financial Officer of RCHC.

*Aboud,* 313 F.3d 166, 175 (4th Cir. 2002). Thus, in a diversity case, a federal court only has personal jurisdiction over a party if a state court in the federal court's forum state would have personal jurisdiction. *Copiers Typewriters Calculators, Inc. v. Toshiba*, 576 F.Supp. 312, 318 (D.Md 1983). To evaluate whether personal jurisdiction exists in a diversity case, a federal court will engage in a two-part analysis. First, the Court will determine whether a state's long-arm statute authorizes the exercise of jurisdiction in the particular circumstances presented. Second, if the Court finds that the long-arm statute permits the court to exercise jurisdiction, it must consider whether such an exercise of jurisdiction comports with the due process standards of the Fourteenth Amendment. *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Maryland has interpreted its long-arm statute as coextensive with the limits of the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *United States v. Undetermined Quantities of Articles of Drug*, 145 F. Supp. 2d 292, 705 (D. Md. 2001). Therefore, the statutory inquiry merges with the constitutional inquiry and the two questions become one. *Id.*

In considering the question of personal jurisdiction, the Supreme Court has drawn a distinction between "specific" and "general' jurisdiction. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction exists where a suit "arises out of" a defendant's contacts with the forum state. *Id.* General jurisdiction, on the other hand,

which permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with the forum, exists only where a foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 414-15. The level of contact required for the exercise of general jurisdiction is significantly higher than that required for specific jurisdiction. *ESAB Group, Inc.*, 126 F.3d at 628. It should be noted that the following discussion on personal jurisdiction will focus on "general" jurisdiction and not on "specific" jurisdiction, since Plaintiff conceded at the first motions hearing that the thrust of her personal jurisdiction arguments centers around general jurisdiction. (See n.2, Memo Op, June 26th, 2007).

General Jurisdiction

General jurisdiction exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the forum state; however, broad constructions of general jurisdiction are generally disfavored. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). The limited discovery ordered by this Court from the last hearing produced a joint stipulation by the parties (Plaintiff's Exhibit "B"), another deposition by Mr. Kenneth Rehmann (Defendant's Exhibit "A"), and the Operating Agreement (Plaintiff's Exhibit "C") and Second Amendment to the Operating Agreement (Plaintiff's Exhibit "D"). The stipulation detailed the testimonies of Mr. Simon Cooper and Mr. David Mann, which essentially reiterate their limited involvement in RC-J. Mr. Cooper is a Director of RC-J and is currently the President and COO of RCHC. Mr. Mann is also a Director of RC-J and is currently an attorney in the General Counsel's Office of Marriott International, Inc., since February 2007.[3]

---

[3] At the time of this complaint, Mr. Mann was employed as an attorney in the General Counsel's office of RCHC.

Defendant's main business activity is to operate the RCSR in Jamaica. In this case, where the Defendant is a corporation and not an individual, their presence within the forum state "can be manifested only by activities carried on its behalf by those who are authorized to act for it." *Int'l Shoe Co.*, 326 U.S. at 316. Plaintiff has alleged several facts which lend support to her contention that this Court has personal jurisdiction over Defendant in Maryland. First, in the Operating Agreement, which is still in effect, the address for the principal place of business for RC-J is listed as Atlanta, Georgia, (their headquarters before they relocated to Chevy Chase, Maryland) and not in Jamaica. Exhibit C at 1. None of the amendments to the Operating Agreement or any other evidence presented by the parties shows that this has been changed to Jamaica. There is also common ownership ties between the corporate officers of RCHC and the directors of RC-J, which suggests some overlap in the duties of the directors in Maryland. The insurance claim that Plaintiff originally filed was handled through the corporate offices in Maryland, and the RC-J obtains its insurance through the corporate parent of RCHC, Marriott International. Exhibit A at 61. According to Mr. Rehmann and consistent with the Operating Agreement, the General Manager of the RC-J is appointed by the Regional Vice President of RCHC in Maryland. *Id.* at 53-54. Moreover, Mr. Mann, Mr. Cooper, and Mr. Rehmann sign documents on behalf of RC-J in their corporate offices in Maryland, as well as receive and review financial statements for RC-J. Some of these documents, including the Operating Agreement, are kept in the corporate offices of RCHC. Exhibit B. Lastly, RCHC hires a third party to conduct customer surveys and reviews of its hotels, including RC-J, to ensure that hotels meet the standards as set forth by RCHC; if a hotel falls short, they are disciplined by RCHC. *Id.* at 50-52.

Defendant, on the other hand, contends that personal jurisdiction is not proper in Maryland since the activities of RC-J do not rise to the level of "continuous and systematic." As stipulated to by Mr. Cooper and Mr. Mann and consistent with Mr. Rehmann's deposition, most of the duties of these Directors are very limited and administerial in nature with regards to RC-J. They have not attended any meetings for the RC-J nor have seen any reports from annual meetings that have taken place in Jamaica. Also, the Jamaican hotel leaders – the general manager, hotel manager, and director of finance – conduct the day to day operations of the Jamaican hotel. Exhibit A at 77-78. Defendant also reiterated that RC-J does not transact or solicit business in Maryland, does not have any interest or possess property in Maryland, nor contracts for any goods or services here. Lastly, even though there are some documents pertaining to RC-J, such as the Operating Agreement, that are kept in the corporate offices of RCHC in Maryland, the books of the primary accounts and primary records of the operation of the hotel are all kept in Jamaica. Exhibit B.

The Court in *Cox v. Ritz-Carlton Hotel Co. of Mexico*, Civil Action No. RDB-05-2556 (November 9, 2006), addressed a similar personal jurisdiction issue with very similar facts. While this Court is not bounded by this earlier decision, it is helpful to refer to its reasoning. In that case, Judge Bennet held that Maryland did have personal jurisdiction over the foreign hotel company after the Plaintiff was injured at its Mexican subsidiary hotel. He based his decision on several factors, such as the corporate headquarters being located in Maryland; several of Defendant's executives maintaining offices in Maryland, including the company president, vice-president, treasurer, secretary, and two assistant secretaries; signed documents by officers in Maryland showing that business was conducted for the hotel in Maryland; and ordinary business

documents being housed in Maryland. As a result of all of these factors, the court found that there was general jurisdiction because these contacts were continuous and systematic with the state of Maryland.

In spite of this, a distinguishing factor in the *Cox* case is the standard of review. There, the plaintiff only had to prove sufficient facts to make a prima facie case, since there was no trial or hearing that took place. Here, the Plaintiff's burden is by a preponderance of the evidence.

In taking all these factors into account and drawing all reasonable inferences in favor of the Plaintiff, the Court holds that there is personal jurisdiction in Maryland over Defendant RC-J. All of these factors – including RC-J's listing of its principal place of business, common ownership of officers and directors, the insurance claims, documents being kept in Maryland, and control in designating the management of the hotel, among others – together conclude that there is some continuous and systematic contact between Defendant and the forum state of Maryland. None of these contacts individually would be enough to confer jurisdiction; but taken together as a whole, the combined acts amount to continuous and systematic contacts to establish general personal jurisdiction over Defendants.

<u>Traditional Notions of Fair Play and Substantial Justice</u>

The second arm of the personal jurisdiction test is the reasonableness prong. In order to determine whether jurisdiction is constitutionally reasonable over a defendant, a court must consider several factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the entire judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of all states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. Of Cal.*, 480 U.S.

102, 113, 107 S.Ct. 1026, 94 (1987) (*citing World-Wide Volkswagen Corp. V. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559 (1980)).

In this case, the burden on the Defendant to litigate in Maryland would not be too great. The Directors of RC-J are all located in Maryland and could testify on the Defendant's behalf, although it may be somewhat inconvenient for the General Manager or other officers of RC-J to travel to Maryland to testify. Even though Plaintiff is a resident of California, Maryland has a strong interest in this case since the Defendant's corporate offices are housed here along with several Directors and Officers. Plaintiff has a strong interest in obtaining relief, since this incident has occurred more than three years ago and resulted in serious permanent injury. Lastly, after balancing the competing interests here, the Court finds that personal jurisdiction over the Defendant would be constitutionally reasonable.

Additionally, as mentioned in the last Memorandum Opinion of June 26, 2007, the Court will not reconsider the granting of RCHC's Motion to Dismiss; at this time, however, the Court will reiterate its position that should Plaintiff uncover facts that would warrant piercing the corporate veil and the extent of control of RC-J by RCHC, the Court would revisit its previous ruling and allow reasonable discovery on that issue.

## CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Paper No. 21) is DENIED. A separate Order consistent with this Memorandum Opinion will follow.

| | |
|---|---|
| September 25, 2007 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |